MOSER v. ZION'S CO-OP. MERCANTILE INST. et al.

No. 7148.  Decided August 2, 1948.  (197 P. 2d 136.)

See 32 C. J. S., Evidence, sec. 1042. Newly discovered evidence, corroborating testimony given only by a party or other interested witness, as ground for new trial, see note, 158 A. L. R. 1253. See, also, 3 Am. Jur. 455.

*Ray, Quinney & Nebeker,* of Salt Lake City, for appellants.

*L. E. Nelson,* of Logan, and *Riter, Cowan & Carter,* of Salt Lake City, for respondent.

WOLFE, Justice.

Appeal by the defendants from a verdict and judgment in favor of the plaintiff for personal injuries sustained by him as a result of defendants' alleged negligence. The parties are referred to as they appeared in the court below.

In order that the legal issues here involved may be fully understood by the reader, it is necessary that the facts and evidence be stated in considerable detail.

The injuries of which plaintiff complains were sustained by him in a collision of his Plymouth automobile which was then being driven by him, and a truck owned by defendant,

Z. C. M. I., and being driven by defendant Rogers. It is admitted that Rogers was a servant of Z. C. M. I. and that he was acting within the scope of his employment at the time of the accident.

The collision took place at about 7:30 p. m. on October 10, 1945, on U. S. Highway No. 91 at a point near Blacksmith Fork River about one and a half miles south of Logan, Utah. The highway runs in a generally northerly and southerly direction, and at the point of the accident, and for a considerable distance in either direction, is straight. The road was paved to a width of 22 feet, and had dirt shoulders about 7 feet wide. The road crossed the river over a bridge which was 25 feet wide from railing to railing.

It was dark at the time of the accident. It had been raining just prior to the accident, but there is a dispute in the testimony as to whether it was still raining at the time of the collision. The road was still wet.

Defendant Rogers was proceding along the highway in a southerly direction at about 40 miles per hour. He had started working at 7:30 a. m. that morning, had delivered a truckload of goods to various towns in northern Utah and southern Idaho, and was then returning to Salt Lake. He had been working "long hours" for a period of about a year and a half prior to this time. Besides having driven his truck a long distance that day, he had unloaded it and had changed a tire. He was alone in his truck.

Plaintiff was driving northerly toward Logan at about 40 to 45 miles per hour. His wife was sitting in the front seat beside him and his wife's aunt, Mrs. Jones, was sitting in the rear seat on the right-hand side.

Both drivers had their lights on and according to the testimony of each, each saw the other when they were a considerable distance apart.

The collision occurred at a point south of the bridge. Plaintiff's automobile came to rest 66 feet south of the

bridge, facing in a generally northwesterly direction. The left front wheel was a foot or two across the center line and the right rear wheel was toward the right or east shoulder of the road, though just how close is in some dispute. One of defendant's witnesses fixed the distance at about two feet.

Defendant's truck came to rest in a barrow pit on the west side of the road at a point 117 feet south of the bridge. It was turned over on its side, and the axis of the truck was roughly parallel to the road.

All of the facts above stated are either admitted or established by the undisputed evidence, except as otherwise noted. As to the other facts in the case, there is a sharp and irreconcilable conflict.

Plaintiff testified that he first observed defendants' truck when it was north of the bridge; that as it came onto the bridge its lights jerked to one side as though it had struck something; that the truck continued to cross the bridge in a normal manner, but after it cleared the bridge, and when about 60 feet away from plaintiff, it suddenly swerved from 5 to 10 feet over the center line and into his lane of travel; that it then swerved back to the right in such a fashion that the front end of the truck passed plaintiff, but he collided with the rear end of the truck which was on his side of the road. This testimony was substantially corroborated by the passengers in plaintiff's car. All of them further testified that plaintiff was at all times on the right-hand side of the road, and plaintiff estimated that he was about 2 feet from the east edge of the paved portion of the road at the time of the collision.

Rogers testified that he did not strike the north end of the bridge as he entered it; that as he proceeded across the bridge he observed plaintiff's car edging toward the left side of the road; that he pulled as far to the right as he could and scraped the railing of the bridge; that after he crossed the bridge he drove as far to the right as he could, with his

right wheels along the shoulder of the road; that plaintiff continued to come toward the left, and came across the center line and struck the truck near the left rear wheel.

Plaintiff's car was virtually demolished in the collision, but pictures of the vehicle taken after the accident and admitted in evidence reveal that the left front portion of the vehicle bore the brunt of the force of impact. The right front fender and tire apparently were not damaged.

There is even considerable conflict in the record as to the circumstantial evidence. Two of the officers who investigated the accident testified that there were tire tracks along the west shoulder of the road from the bridge to the point where defendant's truck came to rest in the barrow pit, and that these tracks were in a virtually straight and unwavering line. One of these officers testified that the tread of the tires of defendant's truck matched the tread of the tracks. The same officer further testified that there was nothing at the scene of the accident to indicate just where the point of impact was.

Two witnesses called by plaintiff testified that they visited the scene of the accident at about 11:00 a. m. the following morning and that they examined the west shoulder of the road and found no tracks extending from the bridge to the point where the truck turned over into the pit. However, they testified that there were tracks from where the truck went into the pit out toward the center of the road, and that such tracks entered the pit at about a 60 degree angle.

Rogers admitted that he did not sound his horn, and there is no evidence that plaintiff sounded his. Nor is there any evidence that either driver applied his brakes.

There is evidence that the north end of the bridge was damaged and it is undisputed that there were scrape marks along the west railing of the bridge from approximately its mid-point to the south end. It is like-wise undisputed that a post at the south end of the bridge was knocked out by defendants' truck.

The evidence as to plaintiff's injuries, and particularly the testimony of the doctor who attended him, indicates that plaintiff was very severely injured. He sustained a severe brain concussion; crushing of the chest; a fractured rib; internal abdominal injuries, the exact nature of which was not determinable; injury to the left shoulder, limiting the use of the left arm; lacerations of the face; deep lacerations of the left calf; and sprained left knee and ankle. For a period of about five weeks plaintiff hovered near death, and during this time he suffered excruciating pain. He had to be kept under opiates during virtually this entire period. Thereafter he started to mend, but he was confined to the hospital for a total period of three months. After he left the hospital he was able to walk only on crutches for a period of several months, and at the time of trial, more than a year after the accident, he still required the use of a cane to assist him in walking. He returned to work after a period of some months, but at first he could work only a half day. At the time of trial he was still suffering from his injuries, and was unable to sleep soundly because of abdominal pains which resulted whenever he remained too long in the same position. Both the doctor, who had been acquainted with plaintiff for about twenty years, and plaintiff and his wife testified that after the accident plaintiff's ability to remember was impaired—that he could not remember the names and faces of his friends and acquaintances, and that he was unable to do his work as well as formerly because he had to make notes of figures and data which formerly he had been able to carry in his head.

On these facts and evidence the jury returned a verdict in favor of plaintiff and against the defendants in the sum of $34,051.40. This figure included not only plaintiff's general damages, but also special damages in the sum of $2,651.40 for hospital and medical care, and also damages for the loss of his automobile. Thereafter defendants moved for a new trial, which motion was denied, and defendants appealed to this court.

The assignment of error principally relied upon by defendants is that the court erred in denying their motion for new trial. The notice of intention to move for a new trial set forth as grounds upon which the motion would be based, all of the seven grounds enumerated in Section 104-40-2, U. C. A. 1943, as the basis upon which a new trial may be granted. However, the only grounds urged in this court, and the only ones which we shall consider, are: (1) That the evidence was insufficient to support the verdict, and (2) newly discovered evidence. We treat first the question of the sufficiency of the evidence to support the verdict. Preliminarily, a few general observations may be of value.

It is a matter now too well settled to admit of any serious dispute (and appellants do not contend otherwise) that the question of granting or denying a motion for new trial is a matter largely within the discretion of the trial court. *White* v. *Union Pacific Railroad Co.,* 8 Utah 56, 29 P. 1030; *Van Dyke* v. *Ogden Savings Bank,* 48 Utah 606, 161 P. 50; *Utah State National Bank* v. *Livingston,* 69 Utah 284, 254 P. 781; *Thompson* v. *Brown Live Stock Co.,* 74 Utah 1, 276 P. 651; *Jensen* v. *Logan City,* 89 Utah 347, 57 P. 2d 708. This rule applies whether the motion is based upon insufficiency of the evidence or upon newly discovered evidence. See cases above cited and *Valiotis* v. *Utah-Apex Mining Co.,* 55 Utah 151, 184 P. 802; *Greco* v. *Gentile,* 88 Utah 255, 53 P. 2d 1155; and *Trimble* v. *Union Pacific Stages,* 105 Utah 457, 142 P. 2d 674. This court cannot substitute its discretion for that of the trial court. *James* v. *Robertson,* 39 Utah 414, 117 P. 1068, 2 N. C. C. A. 782. We do not ordinarily interfere with rulings of the trial court in either granting or denying a motion for new trial, and unless abuse of, or failure to exercise, discretion on the part of the trial judge is quite clearly shown, the ruling of the trial judge will be sustained. *Lehi Irrigation Co.* v. *Moyle, et al.,* 4 Utah 327, 9 P. 867; *White* v. *Union Pacific Ry. Co.,* supra; *Utah State National Bank* v. *Livingston,* supra; *Clark* v. *Los Angeles & S. L. R. Co.,* 73 Utah

486, 275 P. 582; and *Trimble* v. *Union Pacific Stages,* supra. See also *Harrison* v. *Sutter St. Ry. Co.,* 116 Cal. 156, 161, 47 P. 1019, 1020.

With these rules in mind, we proceed to a consideration of the question of whether the trial court abused its discretion in denying defendants' motion for new trial on the ground that the evidence was insufficient to support the verdict.

The rule in this jurisdiction, early laid down by this court, is that where a motion for new trial is based upon insufficiency of the evidence to support the verdict, the trial court will not be held to have abused its discretion in denying the motion unless there is no substantial ∎ evidence in the record to support the verdict. *United States* v. *Brown,* 6 Utah 115, 21 P. 461; *James* v. *Robertson,* 39 Utah 414, 117 P. 1068, 2 N. C. C. A. 782. Therefore, if reasonable minds could have found as the jury did in this case, from the evidence before it, then we cannot say that the trial court abused its discretion in denying plaintiff's motion for new trial on the grounds of insufficiency of the evidence to support the verdict.

Defendants earnestly contend that there are three facts established by the evidence which conclusively show that plaintiff's vehicle must have come across the center line to strike the truck.

(1) Defendants first assert that the evidence conclusively established that there were wheel tracks along the west shoulder of the road from the bridge in unbroken continuity to the point where the truck went into the barrow pit, and therefore it is established that plaintiff's vehicle must have come across the road to strike the truck.

(2) The debris of the accident was scattered about the center of the highway.

(3) The third fact relied upon by defendants is the undisputed evidence that plaintiff's automobile came to rest

with the left front portion thereof extending across the center line.

The ultimate question of fact in this case, is of course, which of the two drivers failed to keep his vehicle upon his proper side of the road. It is clear that at least one of them crossed the center line. The determination of this ultimate fact was for the jury. And the jury having determined this question in plaintiff's favor, and the trial court having denied defendants' motion for new trial, this court cannot say that the trial court abused its discretion unless there was no substantial evidence to support the verdict, or in other words, that all reasonable minds must agree that it was plaintiff, and not defendant Rogers, who transgressed the center line of the highway.

The testimony of plaintiff ,corroborated by the passengers in his automobile, is sufficient basis for the jury's verdict, unless that testimony is contrary to admitted physical facts. Defendants contend that the three facts above enumerated are all conclusively established, and that therefore plaintiff's testimony is impossible of belief.

There are a number of factors in the case which militate against the testimony of the two police officers as to the tracks along the west shoulder of the road from the bridge to the point where the truck came to rest in the barrow pit. In the first place, such tracks would not be likely to continue in unbroken continuity. Rather, one would expect a sharp break in the continuity at the point where the collision took place, especially in view of the fact that the ground was wet, and assumedly somewhat slippery, and the further fact that Rogers, by his own admission, lost control of the truck at the moment of impact. Another factor is the testimony of the two witnesses for plaintiff who as heretofore noted, testified that the tire tracks ran not along the shoulder of the road, but out from the barrow pit toward the center of the road. Lt. Day, defendants' own witness, and the only eye-witness to the collision other than the

occupants of the two vehicles, testified that he was unable to say upon which side of the road the collision took place. It is improbable that he would have any doubts on this question, if defendants' vehicle had been out on the shoulder of the road and plaintiff had come clear across the road. Even the second and third factors enumerated by defendants militate against the first. Assuming as true the contention of defendants that most of the debris of the collision was found around the center of the highway, that fact would tend to indicate that the point of impact was near the center of the highway, rather than over toward the west shoulder. So also if the point of collision had been near the west shoulder of the road, it is likely that a substantial portion of plaintiff's vehicle would have come to rest on the left or west hand side of the highway. Nor does the fact that the left front wheel of plaintiff's vehicle was over the center line when the vehicle came to rest establish that plaintiff's vehicle was across the line before the collision. According to plaintiff's theory, defendant's truck was swerving from the east side of the highway back toward the west when the collision occurred. This swerving motion might have knocked or dragged plaintiff's car partially across the center line.

Taking into consideration all of the above mentioned factors, the jury might have reasoned as above indicated. We cannot say that defendants' evidence conclusively establishes their theory of the facts.

Defendants further contend that the testimony of plaintiff, and particularly that portion of it relating to the facts and circumstances surrounding the collision, is wholly unworthy of belief. They argue that for purposes of fixing liability on the defendants, plaintiff testified ■ in some detail as to the facts and circumstances relating to the collision, and then for purposes of enhancing the damages, testified that his memory was seriously impaired. Defendants' position is that if plaintiff's memory were substantially impaired, his testimony in relation to the collision would not be worthy of belief. This argument is based on a

rather strained construction of the evidence. While plaintiff, and his doctor and his wife as well, testified that he had suffered an impairment of memory, so that he was not able to remember names, and was not able to carry data in his head as well as before the accident, plaintiff did not claim, and there was no evidence to show, that he could not remember actions or events which occurred prior to or at the time of the accident. The testimony of plaintiff was clear, lucid, and plausible. It cannot be said to be in any respect unreasonable or highly improbable. The accident, in any view of the case, was in several respects rather unusual, and a jury could find that the explanation of it offered by plaintiff was more reasonable and probable than that offered by defendant Rogers.

Moreover, as heretofore noted, the testimony of plaintiff was substantially corroborated by that of his wife, who was sitting next to him in the front seat at the time of the accident. And while it is true that she could hardly be considered a disinterested witness, in view of the fact that her husband was the plaintiff, and that she herself then had pending in the district court a suit against the same defendants arising out of the same collision, it was for the jury to say whether her testimony was entitled to less weight than that of Rogers, the driver of the Z. C. M. I. truck, who was a party defendant, and was certainly interested in the outcome of the litigation.

There is in the record substantial evidence to support the verdict of the jury. The trial court did not abuse its discretion in denying defendants' motion for new trial based on insufficiency of the evidence to support the verdict.

We turn now to a consideration of the question of whether the trial court abused its discretion in denying defendants' motion for new trial on the grounds of newly discovered evidence. In support of this ground for the motion, defendants filed the affidavits of Mr. Bowen, their attorney, and Mr. Thomas, an insurance agent. These

affidavits set forth in substance and effect that on about December 26, 1941, about four years prior to the accident here involved, plaintiff was injured in a skiing accident, that his left knee and ankle were disabled for a period of several months, that his accident insurance carrier (North American Accident Insurance Co.) paid benefits for the injuries thereby sustained and that the insurance carrier refused to assume any further liability for any future injury to plaintiff's left knee or ankle. The affidavits further show that about three weeks prior to the accident here complained of plaintiff was a passenger on a bus which was involved in an accident and that the bus company had made a money payment to plaintiff in full satisfaction of any liability claim he might have against the company. The affidavits also set forth that plaintiff made a claim for benefits to his insurance carrier for the injuries received in the accident here involved; that some six months after the accident (about six months before the trial) plaintiff stated to the insurance agent that he was not claiming injuries to his left knee and ankle, and that he demonstrated to the insurance agent his ability to flex his knee and ankle. The affidavits tend to impeach plaintiff's testimony, and to show that at least some of the injuries for which he recovered were sustained in accidents other than the one here involved. Defendants contend that if a new trial were granted the result would probably be different, and that in any event the verdict would be smaller.

Counter-affidavits by plaintiff, his wife, his doctor, and various friends and acquaintances of plaintiff were filed. These admit the skiing accident and payment of the insurance claim, but further set forth that plaintiff enjoyed a full and complete recovery from those injuries, and that thereafter he was able to hunt, climb mountains, and engage in other sports and athletic activities in the same manner and to the same extent as before the skiing injury. The counter-affidavits also admit the bus accident, but set forth that plaintiff sustained no personal injuries therefrom, that he made no claim against the bus company, that

the claims adjuster for the bus company voluntarily came to plaintiff and offered to make a settlement, that plaintiff accepted $150 in full settlement of any liability of the bus company, and that the payment was made to recompense plaintiff for damages to his clothes occasioned by another passenger's having bled upon them, and for personal inconvenience to plaintiff caused by the accident. Plaintiff's counter-affidavit flatly denied that he had made the statement to the insurance agent set forth in the affidavits filed by defendants.

The granting or denial of a motion for new trial on the ground of newly discovered evidence is a matter within the trial court's discretion, which is conclusive unless abuse of discretion is shown. *Greco* v. *Gentile*, 88 Utah 255, 53 P. 2d 1155; *Trimble* v. *Union Pacific Stages*, 105 Utah 457, 142 P. 2d 674. We find nothing to show, or even tending to show that the court abused its discretion. The lower court evidently considered that the counter-affidavits filed by plaintiff fully and satisfactorily explained matters set forth in the affidavits filed by defendants.

As we said in *Jensen* v. *Logan City*, 89 Utah 347, 57 P. 2d 708, 722:

"In a case such as this where the facts are to be proved by the observations of a number of witnesses, the verdict cannot be lightly set aside to permit more witnesses to testify, for new witnesses might continue to be discovered over a long period of time."

And again:

"It is only under very special circumstances, because of the quality or type of proposed evidence and *where it makes clear a fact which was formerly in doubt* that new trials are granted to allow the defeated party to add cumulative evidence, newly discovered, and then *only where there is a clear probability that the result of a new trial will be different.*" (Italics added.)

As to the conflict in the affidavits on the question of whether or not plaintiff made certain statements to the insurance agent, defendants contend that this should be resolved by a jury in a new trial. The ready answer to that contention is that it is well settled in this

jurisdiction that where the newly discovered evidence is merely impeachment of an adverse witness, it is not sufficient to justify a new trial. *Klopenstine* v. *Hays,* 20 Utah 45, 57 P. 712; *Trimble* v. *Union Pacific Stages,* 105 Utah 457, 142 P. 2d 674.

We find no abuse of discretion by the trial court in ruling on the motion for new trial.

The only other assignment of error by defendants is the court's refusal to give their requested instruction No. 1, which reads as follows:

"You are instructed that defendants are not required to explain how or why the collision involved in this case occurred. The burden is upon the plaintiff to show by a preponderance of all of the evidence that the collision resulted from the negligence of the defendant."

Defendants concede that the substance of the second sentence of their request was embodied in the instructions given by the court. The substance of the first sentence of the requested instruction was covered by the court's instruction No. 9, which was as follows:

"You are instructed that the mere fact that an accident happened, or that plaintiff was injured, constitutes no proof of negligence against the defendants."

There was no error. The judgment is affirmed. Costs to respondents.

McDONOUGH, C. J., and PRATT, WADE, and LATIMER, JJ., concur.