## MARSHALL v. OGDEN UNION RY. & DEPOT CO.

No. 7407.  Decided August 31, 1950. (221 P. 2d 868)

See 8 C. J. S., Appeal and Error, Sec. 1763. Negligence of claimant as proximate cause of injury operates as bar to recovery, 92 A. L. R. 47. See, also, 38 Am. Jur., 907.

*Rawlings, Wallace, Black, Roberts & Black,* and *Dwight L. King,* all of Salt Lake City, for appellant.

*Byran P. Leverich, H. B. Thompson, A. U. Miner, M. J. Bronson,* and *Howard F. Coray,* all of Salt Lake City, for respondent.

WADE, Justice.

In March, 1948, John D. Marshall, appellant herein, filed suit against the Ogden Union Railway Co., respondent herein, for personal injuries sustained while working as a chair car porter for the Southern Pacific Railroad Co. in respondent's passenger depot in Ogden, Utah. At the trial of the case in July, 1948, the jury returned a verdict in Marshall's favor of $8,000.00 general damages and $500.00 special damages. This verdict was set aside by the judge and a new trial granted. On the second trial the jury returned a verdict of no cause for action. From this verdict and judgment thereon and from the order of the judge granting a new trial in the first case this appeal is brought.

On the morning of the accident, June 19, 1947, the train on which appellant worked was standing on track No. 8 facing north in respondent's depot. The tracks run in a general northerly-southerly direction. At about 8:30 that

morning, Marshall had placed his step box in front of the north entrance to his chair car which was about 4 or 5 cars south of the head car of the train, and was standing beside it with his back to the train waiting for passengers when he was hit by a truck being propelled by one of respondent's employees between tracks numbers 7 and 8. Track No. 7 being east of track No. 8. Between these two tracks there is a platform approximately 18 feet in width. Extending down the center of this platform are posts called "umbrella posts" which support a canopy over the platform. On this particular morning a truck was placed between the umbrella posts south of the door entrance at which Marshall was standing. This truck had its south end against a post and was standing at a slight northwest diagonal. The trucks were used for handling freight and were about eight feet long, three feet wide and about two and one-half to three feet high. The trucks each had four metal wheels and a tongue in front to which, when used, was attached a three wheeled jitney in which the driver sat and propelled the trucks from place to place within the depot.

From the evidence most favorable to respondent the jury could have reasonably found that as the driver of the jitney and truck approached Marshall he stopped and requested Marshall to move over to the east side of the platform but that Marshall failed to do so, indicating that there was plenty of room for him to pass; that as he proceeded to pass he was watching Marshall and turned his truck out and the corner of his truck struck the standing truck causing his truck to swing against Marshall and the car resulting in the injuries complained of.

Appellant complains first of the court's granting a new trial and argues that it abused its discretion in so doing.

At the first trial appellant in testifying as to the extent of his injuries said that he had been out of work for about

44 days because of these injuries in 1947 and that in May, 1948, a few months before the trial of the case he had been re-hospitalized for two weeks. After the trial, respondent herein discovered that in May, 1948, appellant had been an out patient at the hospital for only 6 days. The trial court after being advised of this by affidavits on the motion for the new trial granted it because, after taking into consideration the facts presented by these affidavits and after studying the transcript of the evidence and recalling the emphasis counsel for appellant herein had put on apellant's confinement to the hospital for two weeks, it was of the opinion that the jury was unduly influenced in awarding excessive special and general damages because of appellant's supposed confinement in the hospital for two weeks just prior to the trial.

The granting or denying of a motion for a new trial is within the sound discretion of the trial court. When a trial court grants a new trial we will not disturb its action unless it is manifestly apparent that the court has abused its discretion. Abuse of discretion does not occur when there is a reasonable basis for the court's action and there is a probability that a different result will ensue. See *Moser* v. *Z. C. M. I.* 114 Utah, 58; 197 P. 2d 136; *King* v. *Union Pacific R. R. Co.*, 117 Utah, 40; 212 P. 2d 692. Here it appeared without contradiction that the plaintiff in the action sought to magnify the injuries sustained by making it appear to the jury that almost nine months after the accident he was so seriously injured that he was confined in a hospital for two weeks when the fact was that he had reported to the hospital in San Francisco, Calif., for about six days for treatments. It is not unreasonable to conclude that the jury was influenced by such testimony in the amount of the verdict it rendered, and under such circumstances this court is unable to say that the court abused its discretion in granting the new trial. Counsel for appellant cites numerous cases where the superior courts of

different jurisdictions and also this court, have sustained the denial of a motion for a new trial by a trial court where the grounds upon which a new trial had been sought was newly discovered evidence tending to impeach the veracity of witnesses of the winning party. These cases can be of no aid where the trial court has granted the new trial. The trial court has a great latitude in determining whether or not to grant such a motion, and regardless of whether it refuses or grants the motion this court will not disturb its decision if such decision has a reasonable basis.

Appellant further complains of the giving of Instruction No. 7 and assigns it as prejudicial error. Appellant does not claim this instruction is an incorrect statement of an abstract principal of law but asserts that its giving to the jury was not warranted by the evidence. The instruction reads:

"You are instructed that where one may perform a duty in either of two ways, one safe and the other dangerous, and with full knowledge that one method of performing the duty is safe and the other dangerous and with full opportunity to make a choice as to which method he shall adopt, voluntarily chooses the dangerous method, such conduct on his part constitutes negligence.

"Therefore, if you find from a preponderance of the evidence in this case that plaintiff, John D. Marshall, was warned of the approach of the jitney tractor and that he could have stepped onto the chair car or could have stepped over to the east with equal ease or could have stepped to any other position which was safe, but voluntarily chose to remain in a dangerous position knowing the same to be dangerous, then he is guilty of negligence, and if such negligence proximately contributed to cause the accident and any injuries he claims to have suffered he cannot recover and you must return a verdict for the defendant 'no cause of action.'"

Appellant contends that the evidence does not justify the giving of an instruction of the safe or dangerous way of performing a duty since appellant was not in a dangerous position when the accident occurred. He argues that because there was a distance of nine feet, between the chair car and the umbrella posts where the truck was standing and since this truck was only about three feet wide there

was plenty of room for the jitney and truck to have passed the standing truck without cornering. Also, since appellant was standing close to the chair car he was only occupying a few inches of space away from that car and was therefore not in a dangerous position. It was only the negligence of respondent's agent in swerving the jitney away from appellant which caused the accident and apellant as a reasonably prudent person could not anticipate such negligence which caused the dangerousness of the situation.

We are inclined to agree with appellant's contention. There was nothing in the evidence from which the only reasonable conclusion that could be drawn was that there was a safe and dangerous way of performing a duty and the voluntary choosing of the dangerous way was negligence as a matter of law. The instruction as given contains this erroneous concept. The jury should have been instructed to determine whether under all the facts and circumstances disclosed to them by the evidence the appellant had or had not acted as a reasonably prudent person. It might well be that a jury could have reasonably believed that the situation in which appellant was at the time of the accident had potentialities of being dangerous, but that a reasonably prudent person under similar circumstances would have acted as appellant did. Under the court's instruction the jury was precluded from so finding. It follows that the giving of this instruction was prejudicial error.

Appellant further contends that the court erred in refusing to give an instruction on the last clear chance.

Appellant testified that on the morning of the accident he was not aware of the approach of the jitney and truck until it started to pass him and then just as it was going by him he was hit. The driver of the truck testified, and this was not controverted, that he saw appellant standing by his car and that as he approached him

he kept watch in order to avoid hitting him, that his attention was on appellant and that he did not pay any particular attention to the standing truck. That as he came close to appellant he swerved so that he would be sure to avoid appellant, and as he did this his truck cornered the standing truck and the accident occurred. Under such a state of facts it was not error to refuse to instruct the jury on the last clear chance doctrine. The driver of the jitney was aware of appellant's apparent peril and he attempted to avoid that by swerving the truck away from him. Under these facts and circumstances, while the respondent's agent may have been guilty of negligence, he was not presented with a last clear chance to avoid the accident. This doctrine contemplates a last *clear* chance to avoid the accident. Here his chance was only possible but not clear. For this court's latest expression of when the last clear chance doctrine applies see *Andersen* v. *Bingham & Garfield Ry. Co.*, 117 Utah 197; 214 P. 2d 607.

Reversed. Costs to appellant.

McDONOUGH, J., concurs.

WOLFE, Justice.

I concur. My main concern, also, is with the first paragraph of Instruction # 7 reading: "You are instructed that where one may perform a duty in either of two ways, one safe and the other dangerous, and with full knowledge that one method of performing the duty is safe and the other dangerous and with full opportunity to make a choice as to which method he shall adopt, voluntarily chooses the dangerous method, such conduct on his part constitutes negligence."

This instruction suffers not only from a poor choice of words, but from a wrong concept.

Certainly it would have required prescience on the part of Marshall to know that to remain standing in his posi-

tion would subject him to the sweep of the handle of the truck which was stationary and which was "cornered" by the moving truck. It did not involve a dangerous situation. "Peril", "hazard", "danger", jeopardy", "risk", and "unsafe" are words connoting situations containing intrinsically various degrees of potentiality for harm. Certainly here there was nothing intrinsically dangerous in the situation. But Marshalls position was unsafe measured by the events which subsequently happened. Many innocent situations would be dangerous from that test. Almost any situation where a chain of events produced an injury might be judged to have been dangerous in view of what happened. At least hindsight might so demonstrate.

But in the manifested judgment of the driver of the jitney, there was a risk in Marshall's remaining at his station but it could have been only the risk attendant on the driver's traverse of a narrow place but certainly not of the accident in the manner in which it actually happened. For if the jitney driver knew it was going to happen he presumably would not have attempted to negotiate the passage. Assuming that the jury did not give the word "dangerous" in the instruction the meaning of "some contingent evil in prospect", but interpreted the instruction to mean that Marshall was warned that there was an unsafeness about his position which could have been eliminated had he changed that position, but that he chose to take the chance, and was consequently injured, the instruction embodies a wrong concept. This is succinctly stated in the opinion of Mr. Justice LATIMER as follows: "The test to determine plaintiff's conduct is not whether there were safer places which could have been selected by him, but rather whether or not under the facts and circumstances known to him he acted as a reasonably prudent person."

Therefore, I agree that Instruction # 7 was prejudicial because the measure of the duty imposed on the plaintiff was not that required by the law.

LATIMER, Justice.

I concur.

In my opinion, the giving of instruction No. 7 was erroneous and prejudicial and requires a reversal of the judgment. A reading through the record suggests why this instruction was used in this litigation.

In the first trial the court gave the following portion of an instruction to the jury:

"You are instructed that where an employee has two ways of performing an act in the course of his employment, and in the exercise of reasonable care would have perceived that the one way was safe, and the other dangerous, he owes a positive duty to the employer to pursue the safe method, and any departure from the path of safety will prevent his recovery."

(The phrase crossed out was in the original instruction but was not read to the jury.)

When the instruction was subsequently requested by the defendant, the first paragraph was tailored to eliminate the employer-employee relationship and it appeared in the second trial in the following form:

"You are instructed that where one may perform a duty in either of two ways, one safe and the other dangerous, and with full knowledge that one method of performing the duty is safe and the other dangerous, and with full opportunity to make a choice as to which method he shall adopt, voluntarily chooses the dangerous method, such conduct on his part constitutes negligence."

The difficulty with the tailoring is that the concept cannot be fitted to the facts of this case.

Assuming that an employee must select a safe method of doing his work, I do not see how that concept has any application to the facts of this case. Plaintiff was not an employee of the defendant and the method he selected to do his work is no concern of it so long as he used due care for his own safety in the particular accident. In this instance, plaintiff had not selected a dangerous method, rather he was employing a well-recognized mode of assist-

ing passengers on and off the cars and certainly one which could not be characterized as being hazardous. Even if we grant that the court intended to deal with the concept of an employee choosing an unsafe place to work, the instruction is still erroneous for the reason that the place was not unsafe until made so by the acts of the defendant and even then the danger was not so obvious that all reasonable persons would conclude it was dangerous.

I am unable to perceive any reason why the usual instructions on negligence cases would not have sufficed in this cause. After all, the issue of contributory negligence on the part of the plaintiff was simply whether by remaining at his post he acted with due care and circumspection and this issue could have been couched in simple language. The test to determine plaintiff's conduct is not whether there was safer places which could have been selected by him, but rather whether or not under the facts and circumstances known to him he acted as a reasonably prudent person.

I conclude the instruction was prejudicial for the following reasons:

If we review the incidents immediately prior to the accident, the place selected by the plaintiff appeared safe and if it became either hazardous or dangerous this condition was brought about by the driver of the truck. Plaintiff was apprised of the fact that the truck was to be driven past the place where he was standing; and, while this information amounted to warning the plaintiff to be observant of the truck's movements, in view of other facts and circumstances, it hardly suggested that by standing fast he was remaining in a place where injury would likely occur. Subsequent events established that by not moving he was struck by the trailer, but he is only chargeable with ordinary care and whether he exercised that degree of care is not tested by hindsight.

The questioned instruction seems to suggest that the jury could find the plaintiff was negligent because he was standing in a dangerous and perilous place; he knew the dangers that existed; and with full knowledge of the hazards he voluntarily chose to remain. The facts do not justify the submission of such a theory. As previously suggested, if the place was dangerous it was made so by the driving of defendant's agent and when that condition was created plaintiff had little, if any, opportunity to select a more secure place. Moreover, that theory suggests to the jury a distorted version of the facts. It portrays the plaintiff as a person with full knowledge of the situation who has been given a choice of selecting between an island of safety and a position of grave danger. The jurors are then told that if they believe he voluntarily chose the latter he cannot recover. I can not find in the record a voluntary choice of a known danger.

PRATT, C. J., dissents.