UPTOWN APPLIANCE & RADIO CO., Inc. v. FLINT et al.

No. 7595.   Decided October 29, 1952.   (249 P. 2d 826.)

See 66 C. J. S., New Trial, sec. 14. Newly discovered evidence as ground for new trial. 39 Am. Jur., New Trial, secs 170-174; 158 A. L. R. 1253.

*Harley W. Gustin, Harold R. Boyer, Ray, Quinney & Nebeker, Albert R. Bowen, Delbert M. Draper, Gordon B. Christenson,* Salt Lake City, for appellants.

*Warwick C. Lamoreaux, Rawlings, Wallace, Black, Roberts & Black,* Salt Lake City, for respondent.

VAN COTT, Jr., District Judge.

This action, originally tried in the district court, was brought by the plaintiff for the purpose of recovering damages arising out of an alleged conspiracy on the part of the defendants to restrain the free flow of merchandise from wholesalers and distributors to the plaintiff.

The plaintiff corporation was organized in 1947 and started business as a retail dealer in household supplies, consisting of radios, electric ranges, refrigerators, musical recorders, and recorders and similar other merchandise, as aforesaid, with its store located at 38 South Main Street in Salt Lake City, Utah.

The organizers and principal stockholders were Bryant S. Badger, Ralph O. Bradley, Gene W. McDonough, Leland B. Tanner, and their respective wives.

The supposed conspiracy upon the part of the defendants is alleged to have taken place during the months of November and December, 1948, and pursuant to said concert of action upon the part of the defendants the plaintiff alleges that by reason of the unlawful acts of the defendants they were forced to cease the operation of their business.

The record discloses that at the time the trial of this case was had in the District Court two of the plaintiff stockholders named were operating in the same place of business an identical retail store as was formerly owned and operated by the plaintiff herein, said operation being carried on under the name of Bradley-Badger Company.

The trial of the case started on the 3rd day of January, 1950, and proceeded from day to day thereafter until the 4th day of February, 1950, when the case was submitted to a jury and after due deliberation the jury returned a unanimous verdict in favor of all of the defendants and against the plaintiff, no cause of action. Thereafter the trial court granted a new trial as against some of the original defendants, but not as to all of them. Those against whom the new trial was ordered are the appellants in this interlocutory appeal assailing the legality of the new trial order and with that question this opinion deals.

The ones against whom the new trial was granted are the following defendants: Robert Nevins, Reed Bigelow,

Leland B. Flint, Flint Distributing Company, E. M. Royle Company and the Paris Company.

From the length of time consumed, as indicated above, the reader can well conceive that the record would be and is voluminous, consisting of two thousand pages of transcript. In addition thereto one hundred exhibits were introduced into evidence in support of the testimony of the witnesses.

It would serve no useful purpose to try to delineate in this opinion the story as told by the evidence. Suffice to say that the trouble between the plaintiff and these defendants arose out of the following:

The plaintiff in its dealings with the public was handling nationally advertised and recognized brands of merchandise, such as was either dealt in by these defendants as distributors or sold by them as retailers. The plaintiff in its advertising of these articles used devices to attract the public to the goods, such as mystery tunes, games, and contests of guessing the number of shot in a bottle, coupon books sold at a discount, and the discounting of the price of the merchandise that was protected in its price among other dealers thereof, in what was claimed by these defendants to be in violation of the Fair Trades Act, U. C. A. 1943, 16A-3-1 et seq., as provided for by the laws of this State.

As a result of the plaintiff's practices other dealers, some of whom are defendants in this action and some of whom are not involved herein, began to discount the same goods to meet the competition thus created, which in general caused consternation among the dealers and the distributors to the point that many dealers were refusing to handle the goods of the distributors unless the practice was stopped.

As a result there was created a situation whereby some of these defendants, who were distributors supplying the plaintiff, refused to deal with the plaintiff upon this and

other grounds. That their reason for thus refusing to deal with the plaintiff was only due to the above there may be some doubt, as a grave question of the plaintiff's financial ability to pay was involved and was, or may have been, in part the reason for the defendants' refusal to further deal with the plaintiff. At any rate, the jury's verdict and the trial court's refusal to grant a new trial as against some of the distributors named as defendants has judicially determined that so far as they are concerned their refusal to deal further with the plaintiff was lawful and we see nothing to indicate from the evidence that the remaining defendants are in any different positions.

Viewing the case in the light of the testimony on the part of the plaintiff, most of whom were the stockholders of the plaintiff and called as witnesses, there is a potent argument in favor of the granting of dismissals as requested by the defendants at the end of the plaintiff's case in chief. That matter not being before us for our decision it is not necessary for us to decide the same, except insofar as it reflects upon the question of the propriety of the action of the trial judge in granting as to some of these defendants the plaintiff's motion for a new trial.

It is axiomatic in this State that the decision of the trial judge in reference to the granting or refusing of motions for new trials is a discretionary matter, ∎ provided there is not an abuse of discretion and there is reason to believe that a miscarriage of justice would result if refused.

This proposition of law is well supported in our recent decision of *Crellin* v. *Thomas,* 122 Utah 122, ▬ 247 P. 2d 264, 265, wherein Mr. Justice Crockett set forth the following:

"As to the first point: [That the court abused its discretion in setting aside the first judgment and granting a new trial] A wide discretion is reposed in the trial court in granting or denying a new trial on the basis of newly discovered evidence. The primary concern of the court is that justice be done, and the granting of such a motion

is only reviewable in this court on the question of abuse of discretion. *Greco* v. *Gentile*, 88 Utah 255, 53 P. 2d 1155. True, the exercise of judicial discretion in such instance must be based on a showing of substantial material evidence, from which it appears there is at least a reasonable likelihood that it would affect the result in a new trial. See *Bowers* v. *Gray*, 99 Utah 336, 106 P. 2d 765; *Saltas* v. *Affleck*, 99 Utah 381, 105 P. 2d 176; *Jensen* v. *Logan City*, 89 Utah 347, 57 P. 2d 708. The granting of a new trial should never be merely capricious and arbitrary, but should only be done when sound judicial discretion, in the interest of doing justice between the parties, so requires. See 66 C. J. S., New Trial, § 201, p. 500 et seq."

But where there is, as in this case, evidence so meager in its nature and extent that a prima facie showing of all of the elements constituting a cause of action are in doubt and no showing is made of any newly discovered evidence or any other matter to indicate that any different evidence would be produced such as could be thought to render a different result from the one the jury came to, we believe that it is not in the furtherance of justice to require these defendants to withstand the expense and trouble of defending a new trial in this matter.

Laborious as was the task in reading this record, that has carefully been done. Much of the evidence is a mass of conclusions and innuendos pointed to by what the plaintiff would like to believe were sinister motives upon the part of these defendants, but just as susceptible of a motive in accordance with law and the legitimate protection of the rights of these defendants. Nowhere in this evidence is there a showing of any concerted action among these defendants. In fact, the meeting shown by the plaintiff attended by the defendants, which plaintiff contends was a conspiracy among them, is said by the plaintiff's own witness:

"* * * to be for the purpose of discussing their dilemna and to find a lawful way of protecting themselves under the Fair Trade Practice Act of this State."

It was attended by an attorney of this Bar and they were advised by him relative to the danger of any concerted ac-

tion by them, which advice the plaintiff's evidence shows by the same witness to have been followed and no action taken by said defendants relative to the matter.

Plaintiff's attitude is to embrace that which is favorable and upon that subject there is little evidence that could be thus construed and to condemn that which is adverse. Such cannot properly be done and although ■ we have given the plaintiff's evidence the most favorable consideration to which it is susceptible we are still at a loss to find sufficient to sustain the position of the plaintiff herein.

We are here concerned with a record that is deficient in the essential evidentiary showing necessary to the establishment of the elements of a cause of action and are not concerned with evidence that is conflicting between the plaintiff and the defendants on the essential matters of the plaintiff's cause, for if we were thus confronted the judgment of the trial court would have to be sustained. *King* v. *Union Pacific Railroad Company,* 117 Utah 40, 212 P. 2d 692; *James* v. *Robertson,* 39 Utah 414, 117 P. 1068.

A like result would also be reached if the weight of competent evidence were in question. *Stack* v. *Kearnes,* 118 Utah 237, 221 P. 2d 594.

We do have, however, the legal authority to determine whether there is any substantial evidence in ■ support of every material element which the plaintiff is required to establish in order to recover. *James* v. *Robertson,* supra.

As will be noted in the *King* case, wherein there was involved the granting of a new trial on evidence that was in conflict on the matter of the negligence of the defendant, this court held that there was substantial evidence to support the plaintiff's position, and the granting of a new trial by the district court was a proper exercise of discretionary power. Many authorities are therein collected in reference

to the granting of new trials by district court judges. For this opinion reference is made thereto without extending our remarks herein by a repetition of old authorities. Our conclusions reached in this case are not in conflict with the above cases cited but are again an affirmance of our consistent holding over many years upon this matter.

Jury trials are a part of the fundamental tenets of our judicial system and where, as in this case a litigant has fully, completely, and without restraint been permitted to show his full grievance to a jury and they have conscientiously and without any showing of prejudice ■ or other extraneous influences decided the matter there must be some basic and compelling reason so inherent in the evidence that the trial judge would be warranted in placing his judgment as to the result to be reached over and above that of the jury.

"A court, vacating a verdict and granting a new trial by merely setting up his opinion or judgment against that of the jury, but usurps judicial power and prostitutes the constitutional trial by jury." *Jensen* v. *Denver & Rio Grande Railroad Company*, 44 Utah 100, 138 P. 1185, 1192.

The result reached by the jury in this case seems to be in accordance with the evidence produced.

This being the state of the evidence we believe, and so hold, that an order to retry this matter is not warranted and to that extent is an abuse of discretion upon the part of the trial judge.

The order granting the motion for a new trial is reversed. Costs are awarded to appellants except as to 600 pages of the transcript of which the first 315 preceded the taking of any testimony, the balance thereof being interspersed through the record. This amount of the record is deemed unnecessary to this appeal and accordingly costs therefor are disallowed as provided by Rule 75(e), Utah Rules of Civil Procedure.

WOLFE, C. J., and McDONOUGH and CROCKETT, JJ., concur.

WADE, J., concurs in the result.

HENRIOD, J., having disqualified himself does not participate herein.