449 P.2d 114

**STATE of Utah, By and Through its ROAD COMMISSION, Plaintiff and Respondent,**

**v.**

**Eva WHITE and Noel White, her husband, Defendants and Appellants.**

**No. 10832.**

Supreme Court of Utah.

Jan. 7, 1969.

Brant H. Wall, Salt Lake City, for appellants.

Phil L. Hansen, Atty. Gen., Warren M. Weggeland, Salt Lake City, Asst. Atty. Gen., for respondent.

HENRIOD, Justice.

This case, reassigned to the author, has to do with a condemnation proceeding where the state took part of the defendants' land. Part was on one side and part was on the other side of an existing highway. Situate on the land taken were a cafe, dwelling house, an old frame house, and a ten-unit motel.

During the trial, the jury, without the trial court's knowledge, was permitted, against the court's suggestion, to view the inside of the structures. This occurred a considerable time after plaintiff or vandals had razed the frame house and extensively had demolished the interiors of the other buildings. Under these circumstances, the defendants contend, and we agree, that the members of the jury well may have been influenced adversely with respect to an objective valuation of the property as of the time of taking. It was for this reason that the trial court cautioned the veniremen not to view the interiors of the buildings.

This court has ruled that in eminent domain proceedings, generally the jury is precluded from basing its verdict on self-obtained evidence not presented at trial.[1]

Defendants' own witnesses' opinions partially are borne out in support of such conclusion. While normally it is within the province of the jury to believe or disbelieve whom it chooses, nonetheless, we are constrained to conclude that under the facts here, as reflected in the record, including the photo exhibits, that such belief or disbelief was influenced by the improper view of the inside of the structures, such as to call for a new trial as requested by defendants. We believe that City of Chicago v. Koff[2] is apropos here when it was observed that:

> There is no method by which there may be preserved in a bill of exceptions the evidence of the manner in or extent to which the minds of the various members of the jury were impressed by a view of a building, and where, as here, such changes have taken place as to render a view of no assistance to the jury, for the reason that the condition at the time of the trial does not reflect the value as of the time the petition was filed, it is an abuse of discretion to permit such view.

We think that under the circumstances of this case, including the photographs showing that what the jury saw inside the buildings was nothing short of a ripped-out interior representing a veritable shambles, justifies the conclusion that this case should be remanded for a new trial as to damages for the *taking,* but *not as to severance damages,* which latter issue was resolved by the

1. Provo River Water Users' Ass'n v. Carlson, 103 Utah 93, 133 P.2d 777 (1943).

2. 341 Ill. 520, 173 N.E. 666 (1930).

jury against the Whites, and which was not an issue on appeal. It is so ordered.

CALLISTER and TUCKETT, JJ., and JOSEPH G. JEPPSON, District Judge, concur.

ELLETT, J., being disqualified, does not participate herein.

CROCKETT, Chief Justice (dissenting in part).

I concur in the view that the jury has, on disputed evidence, determined the issue of severance damages; and that this should be affirmed. It is further my opinion that the jury has upon disputed evidence, made a fair and reasonable appraisal and award of compensation for the property taken, a fact with which the main opinion does not appear to take issue. The trial court very properly permitted a view of the premises, which is certainly a good way for the jury to visualize the total before and after situation. The fault that is found is that the jurors peeked inside the buildings. With due respect to my colleagues, it is, in my judgment, somewhat over-technical and impractical to reverse for this reason. Human nature and curiosity are such that the jury did nothing other than should reasonably have been expected. Moreover, jurors should be deemed to have at least ordinary intelligence and imagination, and to be honest enough to make their evaluation on the basis of the evidence as to what the buildings had been.

There are a number of propositions which to me argue persuasively against granting a new trial: (1) Where there has been a plenary trial and the parties have had a full and fair opportunity to present their evidence and their contentions, a jury verdict has been rendered, and the trial court has placed his approval thereon by refusing to grant a new trial, the judgment should be regarded as having some sanctity; (2) there should be no reversal for error or irregularity unless it is of sufficient importance that it appears that justice has not been done and that in the absence of such error there is a reasonable likelihood that there would have been a substantially different result; (3) the right of trial by jury should be respected by allowing the jury a comparatively wide latitude of discretion in their judgment as to questions of fact; (4) this is also true of the judgment of the trial court; (5) thus respecting the jury verdict and the trial court's judgment has the salutary effect of maintaining respect for the law and its processes; and (6) it also has the highly desirable practical effect of saving the time, trouble and expense of a new trial when there is no reason to believe that there will be any very great difference in the result. See Uptown Appliance & Radio Co., Inc. v. Flint et al., 122 Utah 298, 249 P.2d 826; and Hales v. Peterson, 11 Utah 2d 411, 360 P.2d 822. For these reasons I would affirm the judgment.